Mitchell v. Village Capital Your Honor, may it please the Court? I'd like the courtroom to get settled before we start, Mr. Goldberg. Thank you, Your Honor. You may begin. May it please the Court? My name is Ralph Goldberg. I represent Mr. and Mrs. Mitchell. This case is about whether or not Mr. Mitchell, who is a veteran, properly rescinded. And that issue gets down to whether or not, because he rescinded using UPS instead of the post office, what he properly rescinded or not. Can I, before we get into it, because I don't want you to get too far into your argument before, and then me having to redirect, I'd like to just spend a few words on jurisdiction. Is that okay? Your Honor, yes. Thank you. I appreciate it. With regard to jurisdiction, as I understand our law, there has to be a final decision that's certified by the court. And then there has to be a determination that there's no just reason for delay. Here, I think we meet the first prong, because there's certain defendants who a final judgment was entered against, and the court seemed to clearly do that. As to the second, though, what we've said, as I understand our law, that where the court just encants no unjust reason for delay and doesn't give any analysis or reasoning, we give no deference to that at all. And so what we have to do then is ourselves see if it's clearly determined whether the administrative functions, the administrative reasons for why we don't do two appeals are outweighed by some significant reason why, individual reason to this case, why it needs to happen. And so I'm searching for those reasons that would outweigh our general policy that we don't do two appeals. Your Honor, I don't understand the inner workings of this court as well as I should, perhaps. But early in the briefing period, we received a request from the court, and the request was brief the issue as to whether or not there's jurisdiction. Yeah, we haven't decided it, though. Right, we carried it with the case. Well, that just shows I don't know the inner workings of the court. Your Honor— We often, Mr. Goldberg, just for your edification, seek, propound jurisdictional questions to counsel and seek some briefing on it and then carry that jurisdictional question with the case and allow the merits briefing to go forward. You could actually say something about the jurisdictional question again in your principal brief. But since you've already had jurisdictional briefing, you don't have to do it. But until we decide the jurisdictional question, it's still pending before us. Well, like I said, I obviously don't know enough about this court's inner workings. Well, let me ask you this. The magistrate judge made a determination, did it not, about the no reason for just delay that was specifically adopted by the district court. But, Your Honor, I must tell you that my attention has not been on that issue, and I'd hate to misspeak. Okay. But what I think I would say is this. The only other possible issue would be the remaining state claim. There was a hearing. That gentleman is in default. There was a hearing as to damages on that, and the district judge has not made a decision as to whether or not damages should be awarded. But he certainly issued an order granting judgment as to that other defendant. So, in that sense, I think that it is a final judgment and that all the issues have been resolved. Certainly, there's nothing. All that remains to be done is for the district court to determine damages for the claim against Thomas after the Mitchells finally proceed their default judgment against him, right? That is correct, Your Honor. We've had our hearing. I filed my post-trial briefs earlier this week. What's the pressing need for the litigants for early and separate judgment as to their claims? Well, Your Honor, if you'd asked me that question two weeks ago, I could have answered it really well. Now, I'm not sure I can, so let me explain why. At the time, there were still questions about whether or not they'd be able to make the payments. I must tell you, Your Honor, that within the last 10 days, maybe two weeks, that they have, in fact, refinanced their loan. And so, like I said, if you'd asked me that question two weeks ago, I would have given you a really good answer. Which is they need the money for the refinance or they need some sort of relief because they're going to lose their home. Because a number of times throughout, as we were briefing, they were, in fact, threatened with foreclosure. So I don't know how to answer it any better than I just did. Okay. Thank you, counsel. I appreciate it. It seems to me your best argument, Mr. Goldberg, this morning deals with the failure of the creditor to supply the requisite number of copies of the notice under the regulation. Because if that's a strict requirement, and as I understand it, there are two people who had to be notified. There was one notice. The regulation requires two for each person, which would be a total of four. And there's no materiality requirement in the statute for the required notice. It's the required notice under the regulation. The regulation clearly requires two per person. And if that wasn't supplied, it seems to me you get your three years. Well, Your Honor, a number of things to be said about that. Number one, you've already written an opinion saying that in Harris versus Broome, I believe it is. In Harris, though, did we – I want to talk about Harris before I get to my specific question. In Harris, generally, did we not say that there doesn't need to be perfect notice and that slight imperfections will not defeat the purpose of notice? Your Honor, actually, what you said – does not require perfect notice. Rather, it requires a clear and conspicuous notice of the right to rescind. A technical violation of the act, if immaterial, will not extend the borrower's deadline of the right to rescind. We said that in Harris, right? Your Honor, it was said, but what the holding was, was that it was a violation of the Truth in Lending Act not to give two notices. So what I think – and I think you're right about that. But if I fast-forward that a little bit, what I think Harris – how I read Harris is there are two violations. One was the two-notice rule, which was a violation. The other was they essentially were misled. They essentially told them, we're going to post-date this thing and it's going to be okay. And by the time it elapsed, they had – the time to rescind had elapsed. And it was that second reason that we said that it was not clear and conspicuous. Do I have that wrong? I think you have that wrong because this court has said for as long as the Truth in Lending Act has been around that there's no necessity to prove deception. But I need to get to why I really don't want to talk about it. I don't really think Harris answers the question. It seems to me that the requisite disclosures, the materiality of the disclosures, the clearness and conspicuousness is different from having the notice that's required by the regulation. When you're looking at the material disclosures, you're looking at the content and substance, which is what Harris is about. Here, you just don't have the required notice because you don't have the required numbers. The Seventh Circuit, the Sixth Circuit, all of them have said, look, if you don't give the right number, that's it. And, Your Honor, that would be my argument. But what I want to say to Your Honor is I didn't get discovery in this case. And once it went on appeal for the first time, the counsel for the defendant showed me what purports to be two signed copies. Now, I think I would still be entitled to have that reversed. But as a betting person, I'd like to concentrate on the first argument for which I haven't even gotten a word out edgewise. And I simply would like to say that the way there's nothing in the regulations or the commentary that says that courier notice is not entitled to the same treatment as the mail. The problem with that is it goes to what the meaning of mail is, what the ordinary meaning of mail is. And if you look at dictionaries from the period in which this law was adopted, I'm not sure private courier is going to cut it for you, Mr. Goldberg. You can make whatever argument you want to, Mr. Goldberg. There may be some arguments that are more likely to give you a win than others, but you choose which one you want. Well, Your Honor, I'm not blind when somebody tells me something. I'll just leave it at that. But I would like also to talk about the possible fraud in this case because I think that what happened in this case was that the court misread the fraud allegations. And the fraud allegations were based on the fact that Mr. Dunn gave to Mr. Sherwood truth in lending disclosures. And because for reasons that escaped me, my clients believed that he was an attorney and they would trust him. And the court said that as a matter of law that my clients could not rely upon that representation. And I think that under Sestola, that in fact Sestola's the case under state law where the original representation was made in May of 1999, but he didn't sign it until October of 1999. And the court said it was still up to the jury to decide that. And one of the reasons is because there could be two separate causes of proximate cause. The fact that they signed the document does not insulate any of these people from the fact that fraud was committed. We know that Mr. Sherwood was representing Village. Oh, Your Honor, I just lost my time. So I'll just use that for the rebuttal. Okay. Mr. Goldberg, you've saved four minutes. Mr. Gray. Thank you, Your Honor. Your Honor, may it please the court. Jonathan Green for Defendant, Village Capital and Investment. So in regards to what I think is this court's initial issue on the response to the jurisdictional question, Magistrate Salinas, in her order issuing final judgment to Village, made specific findings, namely that this case had been lingering, the motion to dismiss had been granted several years before, and it also made note that there was insufficient efforts to proceed against the remaining defendant in default. As a result— How does that overcome the presumption, though, or the—whether you call it a presumption or the other side of the scale about dual or double appeals in a case where you're required to show some cost or some specific harm? Well, I think the way that we put it in our case law is outbalanced by pressing needs of the litigants for early and separate judgment. Now, those are great reasons why the court wants it off its docket. I get that. But what I don't see and what I—anywhere there, even assuming you can use those as findings that were adopted, and I have a hard time seeing that, but even if you could see that, I don't see where there's any discussion of the pressing needs of the litigants for early and separate judgment as the same claims and parties. Well, I think it was inherited basically on what Mr. Goldberg referenced in that you had his clients out there with a mortgage. They did not want. You had my client. Can you show me where there's record evidence that they were—that, A, that was a finding of the court, or, B, that they were going to be foreclosed upon? Because all we have is a complaint here. It was not. Right. Let me suggest to you that we have said as early as 1997 in Ebrahimi v. City of Huntsville that if the reasons for the entry of judgment are obvious and remand to the district court would result only in unnecessary delay in the appeal process, we will not require an explanation. And in this situation, I would say that is applicable. The fact of the matter is the remaining defendant, to my knowledge, has never made an appearance, never stepped into court. The actions of the lower court are perfunctory. What's the obvious pressing need of the litigants for early and separate judgment? I'm not talking about the early need. I'm talking about the reference to— No, Chief Judge Pryor is absolutely right. In other words, where reasons aren't given, where it's just incanted, what we say is if it's obvious from the record, then we don't have to do it. But the obvious thing has to be the finding of that the—our normal—the cost and risk of multiplying the number of proceedings and of overcrowding the appellate docket have to be outbalanced by the pressing needs of the litigants for early and separate judgment. And I just want to know where in this record is there an obviousness of the pressing need of the litigants for early and separate judgment. I thought your point earlier was it was what Mr. Goldberg had said about the need for his clients to rescind— It was. —the mortgage and keep their house. As a—you know, in addition, it's just the general need that— And it's either that. That either satisfies it or it doesn't is the point, right? Yes. We can decide whether it satisfies it, but that's it, right? There's nothing else. Correct, Your Honor. Okay. Now I'm going to turn to what I think is the principal issue on the merits, which is the 1 verse 2 notices. Now I'm going to start by pointing out something that is—makes this case extremely unique in that there is no question that notice was given that the Mitchells knew about their right to rescind. They signed the right to rescind, and they sent it in, albeit in an improper manner. Yeah, you have to notify the creditor in accordance with the regulations of the Bureau, right? That's what the statute says. Yes. And at least two of our sister circuits have said that if you don't provide the number of notices required by the regulation, that's it. And I'm going to— Then you fail to give proper notice of the right to rescind. Well, as initial— And it's—we clearly have a case where it's not the required number. You'd have to have four, right? Well, in this case, I believe, as noticed by the actual right to rescind, which is attached to the motion to dismiss as Exhibit B and was taken and was given—taken judicial notice by the trial court, there is only one actual borrower, and that's Mr. Mitchell. Mrs. Mitchell was not an actual party to the loan, and that was raised as a separate ground to dismiss at the lower court that she was not actually a borrower. So, in this situation, it would only be two copies. Okay. Were there—is that what we have here, or do we have one? As Mr. Goldberg mentioned, I did send him two signed copies leading up to the mediation in this case, and you can— What was the—what did the complaint allege? The complaint only alleged that one was given. Okay. So, on a certain point— We don't—we're not here on a motion for summary judgment where there's been evidence presented to the district court that there were actually two. No, we are not, but I would like to point the court to the actual language in 12 CFR 1026.23a.3. The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph B of this section, or delivery of all material disclosures, whichever occurs last. Yeah, the materiality is about disclosures. The required number is the notice. But I am just going to reference that in the actual regulation here, it only refers to a single notice. It does not refer to notices. So, when we're dealing with the act of rescission— Now, the regulation C is pretty clear about what the required number of notices is, isn't it? Well, it is that that's the required number, but where it actually references the number of notices required and for rescission, to prevent rescission— Here's what the Seventh Circuit says. Regulation C demands two copies. This is not a situation in which there's any room for some kind of substantial compliance rule. Two copies means two copies, not one. The borrower is entitled to the opportunity to convince the tryer of the fact that he did not receive all the regulation promised him, and thus he may proceed with the suit to rescind the loan. And I'm aware of that the Seventh Circuit and I believe the Fourth Circuit have ruled similarly. The Sixth Circuit. But we are in the Eleventh. Yeah, we are. And I don't think we've really decided that question. Pardon? I don't think we've decided that question. No, this Court has not. So, Counselor, you're asking us on the one hand to strictly construe the statutes to say what they say, which is postal means U.S. Postal Service. But then, on the other hand, you're wanting us to say that there's some wiggle room about the number. Well, what I'm saying is that the CFPB, when they initiated their rules, both in the actual statute they referenced and in the official interpretation, they referenced required notice. And that's no S, no parentheses S. They simply say notice. So a strict reading of that could easily be interpreted to mean that in order to undergo the actual rescission, in this case to start the clock, all you need is to give one notice. Now, the CFPB and Reg Z certainly indicate that two notices are required, but there are different types of remedies out there. There is the strict issue with rescission, and the CFPB, in its reference to notice, in order to start the clock, only references one notice. Elsewhere, they say two, so it's quite understandable that the failure to give two notices may not be sufficient to extend the deadline to rescind, but it could, where there's some sort of actual damages, support such a situation. We, and this kind of takes us on a different path, but I seem to recollect that there was some allegation that the Mitchells did allege that they were told by your party that they had received the notice and that they were going to process it and that they were going to rescind it. So why shouldn't we maybe go off on that tangent and send it back on that issue that perhaps there was a waiver? Well, in regards to that, that conversation occurred well past the three-day rescission period. Yes, but if you waived your rights by saying, you know, we're going to just let that go, why shouldn't we go off on that tangent? Well, as an initial matter, I'm going to point out that this issue was not raised at the trial court. It was not raised in the appellate brief, and hence it's been waived by the plaintiffs. However, forfeited by the plaintiffs. In regards to the secondary issue is rescission is a unique remedy. It is not a simple remedy that can be done because in the mortgage industry, once the period ends for rescission, money sent, it goes to another company. In this case, it was a refinance. And in this situation, it's not in the record, but I will make the statement as the money had already been sent and was not returned. So there was no way to rescind it. It wasn't a situation where there was money sent, you know, Village hadn't sent the money. Village was happy to rescind, but they could not. And so sending it, and secondly, there is no cause of action for an employee of Village saying something that they could not accomplish. This is not a fraud situation. There was no reliance. It's not even one of the elements of fraud that's out there. So turning back to the issue of the two notices, I would like to turn back. I know you've indicated your preference and your feelings about Harris v. Schoenberg. But setting aside what the CFPB says and its reference to notice is there's a long history of cases, both here and in other places, that says notice does not have to be perfect. It just has to provide clear and conspicuous notice of rescission. Here it is, the Veal v. Citibank case. And when Schoenbaum, which was a follow-up decision. What was the alleged material difference or non-material difference in Veal? And what was it in Smith? Because what the Chief Judge has said is the materiality goes to the nature of the disclosure. As to notice, there is no language regarding materiality. That's his point. And in the Smith decision, I specifically know that it dealt with a waiver of the right to rescind being executed and the timing of that. And in this situation, though, I'd just like to focus on the word immaterial because in this situation, it is immaterial. And I will tell you, this is a very narrow situation. And no court in the country, to my knowledge, has ever looked at a case similar to the Village decision where you had a notice sent and, I mean, a notice received, immediately signed and sent, but sent in a manner that could not affect rescission. And then the allegations relate to 1 verse 2 being given. Here, there is simply no way that giving 2 would have changed the situation, and hence it's immaterial. But if the materiality requirement only goes to the disclosures, that is the content of them, then you don't have an out on that. But once again, I would just refer to 12 CFR 1026.23 A3, and it's an official interpretation where they reference notice without an S to indicate that it is not, for the purposes of rescission, it's not necessarily clear that you have to give 2 to start the clock. Thank you, Your Honor. Thank you, Mr. Goldberg. You've got 4 minutes. Counsel citing the wrong provision of Regulation Z. Regulation Z 1026.23 B1 provides, in a transaction subject to rescission, the creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. And the official commentary says the same thing. Tell me this, Mr. Goldberg.  Your Honor, that's what my clients tell me, and it's going to be a factual issue, you know, if it's remanded. But I'd like to also point out. What does the complaint allege? The complaint alleges that they received one copy. Yeah. Does it allege they're both borrowers? I'm sorry? Does it allege that they are both borrowers? Right. It did, Your Honor. And I must say, Counsel's right. They're not both borrowers. Only Mr. Mitchell is the borrower in this case. So you'll concede that there's only one borrower? Yes, Your Honor. I will concede that point. Okay. But I'd also like to note that there's no evidence as to when the rescission notice was received. The only way we know is that the court took the defendant's answers explaining when the notice was received. But there's nothing in the complaint that states when it was received. And I think that's the point. Your Honor, I can't help myself. I'm going to go back to mail. And I understand what you said, but I can't help myself. And I apologize, but nevertheless. That's okay. Your Honor, I don't think that this is any later than, for example, the Federal Rules of Civil Procedure, which were in 1938. And yet in the Chustema case, which I cited, this court said that what mail meant was ambiguous. And if you go back and you look at the right – first of all, there's nothing in the statute that uses the term mail. You have to go look at the commentary. And the commentary is just not as clear as might be thought because it talks about the post office as being another courier service. There's a regulation that refers to mail, right? Well, the regulation talks about mailed. Okay. But it doesn't say mail. And the problem – Wait a minute. It talks about mail, but it doesn't say mail? It says when mailed. That's all it says. It doesn't say post office. So it goes to what the meaning of mail is. It goes to what the meaning of mail is, Your Honor. And I think what shows that this does not mean only U.S. postal mail is that to find something that said that, they had to go to the regulations in the commentary interpreting 1640B. 1640B has to do with correction of errors. It specifically does not talk about 1635. On the other hand, 1640C, which is the clerical mistake kind of argument, does talk about rescission. And I think that that is the clearest indication. I think, you know, it has to do with – But I don't know that you need to go to that. I know that you're right that they argue that separate interpretation, and I'm not sure we need to use the interpretation. But if you go to the official interpretation or the official gloss that the CFPB puts on it with regard to this specific regulation, and I just give some examples, and I'm looking at example B. It says, if the disclosure was given and the transaction consummated on a Friday and the rescission notice is given on Monday, the rescission period expires at the Monday of the third business day after that date. And then here, the consumer must place the rescission notice in the mail. Placing something in the mail is a pretty specific reference to the mail, is it not? And it's the mail. It's the specific mail, not a mailing or – Well, Your Honor, I think that it's not as specific because the regulation also talks about courier services other than the U.S. mail. Not this regulation, not the regulation with regard to this. Because you can also send it by other means, but the problem is when you send it by the other means, then what's going to matter is when it's delivered to the creditor as opposed to when you do it by mail, what counts is when you've deposited it in the mail. Well, Your Honor, I – The timing becomes important. Yeah. I'm just – am I wrong about that, Mr. Goldberg? Your Honor, I think you look at the fact that this Court used the term when they talked about mail as ambiguous, and it was talking about something that had been put into the statutes in 1938. And I think if something put into the Federal Rules of Civil Procedure in 1938 was ambiguous, when the Court decided chaudisme, that something in the statute was also ambiguous, particularly when given the overwhelming requirement to interpret truth in lending, a strongly in favor of the consumer. Okay. Thank you, Mr. Goldberg. We have your case. We'll move to the last case for today.